623 P.2d 33

Robert F. GARDINER dba Gardiner Electronic Co., Plaintiff-Appellant,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency; and Dennis E. Connolly, Defendants-Appellees.

No. 1 CA–UB 041.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 25, 1980.

Rehearing Denied Jan. 7, 1981.

Review Denied Jan. 27, 1981.

Berry & Martori, Ltd. by Frederick C. Berry, Jr., Phoenix, for plaintiff-appellant.

Robert K. Corbin, Arizona Atty. Gen. by David Rich, Asst. Atty. Gen., Phoenix, for defendants-appellees.

## OPINION

O'CONNOR, Judge.

This appeal is from a decision of the unemployment insurance appeals board holding that the appellee, Dennis E. Connolly, was entitled to unemployment compensation benefits and was not disqualified on the basis of misconduct connected with the work. The appellee was employed by appellant for approximately twenty months as an assembler in appellant's shop. He was discharged by the appellant, his employer, Robert F. Gardiner, on July 27, 1979. The employer cited as the reasons for the discharge that Mr. Connolly was habitually late for work, that he often failed to report for work at all and would not telephone to let the employer know he would not be present, that he worked too slowly, and that he would interrupt his work by talking to fellow employees.

The appellee claimed he was discharged for taking his customary afternoon break along with the other employees.

The deputy of the Arizona Department of Economic Security determined that appellee was qualified for unemployment benefits. The employer appealed and an appeal tribunal hearing was conducted. At the hearing, the employer testified that Mr. Connolly was habitually late to work. The work day was an eight hour day, beginning at 9:00 A.M. The employer's time sheet showed that Mr. Connolly had reported to work on time only five times in the preceding three months, and was usually from one-half hour to two or more hours late. The employer also testified that Mr. Connolly sometimes did not appear for work at all, that he neglected to telephone when he was not going to be present, that he would "loaf and talk" when he should have been working, and that he was an "extremely slow worker." The employer also testified that he attempted to reprimand and discipline Mr. Connolly throughout his employment and to warn him of the consequences of a failure to improve his performance. The employer further testified that he often assigned the employee to work in the yard outside the shop, mowing the lawn and trimming the hedges, as a disciplinary measure. It was undisputed that the employee was instructed not to enter the shop or plant area for any personal reason when he was assigned to do yard work for disciplinary reasons. It was also undisputed that on the last day of work, Mr. Connolly was ten minutes late to work and was assigned to do yard work that afternoon about 3:00 P.M. as a disciplinary measure. Mr. Connolly took a break at about 3:30 P.M. and entered the shop during the break. The employer saw Mr. Connolly inside on his break and, after talking to the employee for about an hour, discharged him. The employee testified that he had never been told not to take a break when assigned to yard work, but admitted the employer had told him not to come inside. He also testified that he had "totally just lost interest in working there because it appeared that he was trying to make me quit, and I knew if I quit I could not get unemployment insurance."

The appeal tribunal found that the "approximate [sic.] reason for [the] discharge was because the [employee] took a break while assigned to yard work," and that the employer had failed to show that the employee had been told he could not take a break. The tribunal also found that although the employee's work attendance record was poor, the employer had tolerated it, and therefore the discharge was not for work-connected misconduct, citing A.C.R.R. R6-3-51385. The employer appealed to the appeals board, which approved and adopted the findings and conclusions of the appeal tribunal. This appeal followed.

A.R.S. § 23-775 provides in part that:

An individual shall be disqualified for benefits:

\* \* \* \* \* \*

2. For the ten consecutive weeks immediately subsequent to first filing a valid claim after he has been discharged for wilful or negligent misconduct connected with the employment, and in addition his maximum benefit amount shall be reduced by an amount equivalent to eight times his weekly benefit amount.

A.R.S. § 23–619.01 provides in part as follows:

A. "Misconduct connected with the employment" means any act or omission by an employee which constitutes a material or substantial breach of the employee's duties or obligations pursuant to the employment or contract of employment or which adversely affects a material or substantial interest of the employer.

B. "Wilful or negligent misconduct connected with the employment" includes, but under no circumstances is limited to, the following:

1. Absence from work without either notice to the employer or good cause for failing to give notice, *repeated absence from work without good cause where warnings regarding repeated absence have been received from the employer, frequent absences from work without good cause,* failure to return to work following an authorized leave, vacation, sick leave or other leave of absence when such failure is without permission from the employer, or *repeated failure without good cause to exercise due care for punctuality or attendance in regard to the scheduled hours of work set by the employer.*

\* \* \* \* \* \*

7. Violation without good cause of any rule of conduct, safety rule or other rule in any way related to the employment which is reasonably imposed and communicated by the employer or which can be reasonably implied from the type of employment. (Emphasis added.)

\* \* \* \* \* \*

A.C.R.R. R6–3–51310, Rules of Procedure Before the Industrial Commission, provides in part that:

Employees need certain personal time during working hours. Temporary cessation of work for such purposes is generally not misconduct. However, failure to follow rules and procedures concerning leaving work area may be misconduct. The reasonableness of the worker's action under the specific circumstances will determine whether the act is misconduct.

A.C.R.R. R6–3–51385, Rules of Procedure Before the Industrial Commission, provides:

A. Before a disqualification for a discharge for misconduct may be applied, the worker must have committed an act(s) of misconduct connected with his work and he must have been discharged for such act(s).

B. Generally, only the employer can state authoritatively the reasons for the worker's dismissal. If the discharge does not follow the commission of misconduct in a prompt and reasonable sequence of events, the burden falls on the employer to establish the causal relationship. When an unreasonable length of time has elapsed between the commission of the act and the discharge, the employer has in effect condoned the act, and the subsequent discharge is not for work-connected misconduct.

A.C.R.R. R6–3–51435(C), Rules of Procedure Before the Industrial Commission, provides:

An isolated instance of tardiness usually is not misconduct. However, when an employee has special responsibilities such as opening an establishment, furnishing power and heat for others and the like, his failure to exercise a high degree of concern for punctuality may amount to misconduct. In the absence of pressing responsibilities, *misconduct may be found in repetition of tardiness caused by the worker's failure to exercise due care for punctuality.* (Emphasis added.)

■ On appeal this court does not sit as a trier of fact and will not substitute its view of the facts for that found by the adminis-

trative agency, and must affirm the award if it is supported by any reasonable interpretation of the evidence. *Beaman v. Aynes*, 96 Ariz. 145, 393 P.2d 152 (1964); *Bergstresser v. Industrial Commission*, 118 Ariz. 155, 575 P.2d 354 (App.1978); *Richert v. Employment Security Commission*, 20 Ariz.App. 99, 510 P.2d 410 (1973). However, the court may substitute its judgment for the agency's conclusions regarding the legal effects of such facts. *Arizona Department of Economic Security v. Magma Copper Co.*, 125 Ariz. 23, 607 P.2d 6 (1980); *Eshelman v. Blubaum*, 114 Ariz. 376, 560 P.2d 1283 (App.1977).

The respondent, Arizona Department of Economic Security, contends that the evidence shows the employer did not order the employee to perform yard work as discipline on every occasion that the employee misbehaved, and that on certain other occasions the employer ordered the employee to do yard work for other reasons. Respondent also argues that, despite the employee's extensive record of work absences and tardiness, the employer had allowed an unreasonable time to elapse before discharging the employee, thereby condoning his misconduct, if any.

The appellant employer contends, on the other hand, that the evidence showed a consistent pattern of the employee's misconduct, followed by reprimand or disciplinary assignment to yard work at the first opportunity, and that on the last day, when the employee was found inside the building in violation of his instructions, it constituted "the last straw," justifying a termination for misconduct.

■ A.R.S. § 23–619.01(B)(1) clearly indicates that wilful or negligent misconduct by an employee includes "repeated" or "frequent" absence from work without good cause, and "repeated failure without good cause to exercise due care for punctuality or attendance." This statute follows the general principle that persistent or chronic absenteeism or tardiness without good cause, especially if continued after warnings by the employer, constitutes wilful misconduct and precludes payment of unemployment benefits upon discharge. *See*

Annot., Discharge for Absenteeism or Tardiness as Affecting Right to Unemployment Compensation, 58 A.L.R.3d 674, 685 (1974). The testimony was undisputed that Mr. Connolly was frequently late to work or entirely absent, and that most of the incidents were without good cause. It is also undisputed that he was frequently reprimanded or disciplined by being assigned yard work. Mr. Connolly also conceded in his testimony that on the day of his discharge he was ten minutes late to work, had been assigned yard work, and had been told he could not enter the shop or building. Although there is conflict in the testimony as to whether Mr. Connolly was permitted to have an afternoon break, the appellant employer assigned other reasons for the discharge, namely the continued tardiness, absences without notice, slow work, and talking to other employees.

■ The decision of the appeal tribunal and of the appeals board found that the employee's tardiness and poor attendance at work had continued for a long time and "therefore, it had been tolerated by the employer." There is no substantial evidence in the record on which the board could find that the employer had "tolerated" the employee's actions. The undisputed evidence showed that the employer had consistently reprimanded and disciplined the employee for his disregard of his work requirements, hoping that the employee's punctuality, attendance, and productivity would improve, until at last his patience was exhausted. These facts show that the employer acted persistently in attempting to change the employee's behavior, rather than passively tolerating the employee's acts. Evidence that on one occasion the employee was assigned yard work for reasons other than discipline does not negate the evidence of his repeated tardiness and absence and of the disciplinary action taken by the employer. The findings of the appeal tribunal and the appeals board are not supported by any reasonable interpretation of the evidence.

■ The respondents maintain that an employer must either discharge an employee immediately upon his reporting to work late or being absent without good cause, or

else condone the employee's acts. We do not agree with the respondents' legal conclusion because to do so would make it effectively impossible for an employer to fire an employee for work-related misconduct involving repeated and frequent tardiness or unexcused absences. A.R.S. § 23–619.01 expressly defines wilful misconduct as including *repeated* and *frequent* absences or tardiness. An employer could not reasonably discharge an employee in most cases for a *single* incident of absence or tardiness unless the employee had special responsibilities. Nevertheless, if the employer were to wait to discharge the employee until the employee had been *frequently* or *repeatedly* late or absent, under the respondents' theory the employer would risk being found to have condoned the employee's behavior. We believe the respondents have incorrectly interpreted A.R.S. § 23–619.01. An employer may, and normally should, take a reasonable time to determine the proper course of action to take when an employee fails to follow rules for his employment, and may attempt to reform the employee's bad habits, through reprimands and disciplinary measures without "condoning" or "tolerating" the employee's conduct. For a case from another jurisdiction, *see Com. Unemployment Compensation Board of . Review v. Turner*, 31 Pa. Cmwlth. 70, 375 A.2d 829 (1977) (finding no condonation when employee with record of excessive unexcused absenteeism was discharged the day after he returned to work rather than on the day he returned). There is no substantial evidence in this case that the employer waited unreasonably long to discharge the employee. *Also see generally* Annot., 58 A.L.R.3d 674 (1974).

Because there was no substantial evidence that the appellant had condoned the employee's frequent absences and tardiness and his talking to other employees during work, and because repeated incidence of tardiness constitutes wilful misconduct, we reverse the decision of the appeal tribunal and remand this matter to the appeals board for adjustment of the allowable unemployment compensation benefits.

OGG, P. J., and DONOFRIO, J., concur.